FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAR 29 2006

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JUVENAL OVIDIO RICARDO
PALMERA PINEDA,

Defendant.

Cr. No. 04-232 (TFH)

## MEMORANDUM OPINION

Pending before the Court is a Motion to Compel [# 26] filed by the defendant, Juvenal Ovidio Ricardo Palmera Pineda, who hereafter will be referred to by his nom de guerre, Simon Trinidad. After carefully considering the defendant's motion, the United States' opposition, the defendant's reply thereto, the arguments presented by the parties at the hearing held on January 25, 2006, as well as the entire record in this case, the Court will deny the defendant's motion for the reasons that follow.

### BACKGROUND

On March 13, 2004, a federal grand jury returned a five-count indictment against defendants Simon Trinidad and Fuerzas Armadas Revolucion Arias De Colombia ("FARC") for conspiracy to commit hostage taking, hostage taking, aiding and abetting and causing an act to be done, and material support of terrorists, in violation of 18 U.S.C. §§ 2, 1203(a) and 2339A. Indictment ¶ 10. The charges stem from accusations that FARC shot down a small aircraft carrying four Americans and a Colombian military officer, took the passengers hostage, immediately killed one American passenger and the Colombian military officer, and continues to detain the remaining passengers as hostages in the remote jungles of Colombia. Id. at ¶¶ 11-12.

FARC later issued a public communique acknowledging its detention of the Americans and identifying the defendant as a representative to negotiate a hostage release in exchange for political concessions from the Government of Colombia. Id. at ¶¶ 12(i)-(j). Individually, the defendant is further accused of providing material support and resources to terrorists, i.e., the FARC, knowing that the support and resources would be used to commit the conspiracy and hostage taking. Id. at ¶¶ 11, 12. He also is alleged to have traveled illegally to Ecuador to obtain fraudulent identification documents that would allow him to assume a false identity to travel to participate in hostage-release negotiations on behalf of FARC. Id. The defendant was extradited to the United States from Colombia and currently is awaiting trial.

On September 26, 2005, the defendant filed a Motion to Compel that sought to require the United States (hereafter the "Government") to produce fifteen categories of documents and information. The parties submitted legal briefs in support of their respective positions and the Court held a hearing to entertain oral arguments on the matter. The parties now agree that some of the defendant's requests have been resolved. Others, however, are still in dispute, namely the following:

Request 1: Copies of any notes taken by agents of the United States or agents of any foreign government during the course of interrogations or interviews of Mr. Trinidad.

Request 4: Written summaries of any expert testimony the Government intends to use in its case-in-chief, including descriptions of the witnesses' opinions, the asserted bases and reasons for the opinions, and the witnesses' qualifications.

Request 7: Documents and information regarding the actual or suspected location of the United States nationals detained in Colombia and the defendant's location from the date the United States nationals were detained until his arrest in Ecuador.

Requests 8-15: Documents or information regarding the relationship of the detained United States nationals to the United States government, the purpose

> of the flight on February 13, 2003, any surveillance or intelligence-gathering equipment on the flight, whether anyone on the flight was armed, instructions provided to the United States nationals in the event they were captured by FARC, reports or memoranda submitted to various government entities or private contractors concerning the results of similar prior flights by the United States nationals, reports or studies discussing the degree of control exercised by the Government of Colombia over its territory and areas of the country where such control is lacking, and reports or studies concerning the structure and organization of FARC.

With respect to these requests, the defendant argues that "the government's denial of several requests evidences an overly parsimonious view of its discovery obligations . . . ." Def.'s Mot. Compel 3. In at least one case, the defendant also takes issue with the timing of the Government's proposed discovery. Def.'s Reply Supp. Mot. Compel 3-4. The Government, on the other hand, argues that it has met its required disclosure obligations. Gov't Opp. Mot. Compel. 5-16.

## DISCUSSION

The Government's obligation to disclose to the defendant documents and materials in its possession, custody or control is generally governed by Rule 16 of the Federal Rules of Criminal Procedure (hereinafter cited as "Fed. R. Crim. P."), well-established Supreme Court precedent, and 18 U.S.C. § 3500, which is commonly referred to as the "Jencks Act." Rule 16 delineates the specific categories of documents and materials the Government must make available to a defendant on request prior to trial, including a defendant's oral, written or recorded statements, prior criminal records, documents and objects that are material to prepare the defense or will be used in the Government's case-in-chief at trial, and summaries of the Government's anticipated expert testimony, among other disclosure requirements. Fed. R. Crim. P. 16. In addition, the decision in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), made clear that fundamental notions of fairness and due process require the Government to disclose evidence favorable to an accused.

3

Other decisions have refined and further defined the Government's obligations to disclose exculpatory evidence to a defendant. See e.g., Giglio v. United States, 405 U.S. 150, 108 (1972) (holding that the exculpatory evidence the Government must disclose to a defendant includes evidence implicating the credibility of the Government's witnesses). Finally, the so-called Jencks Act governs the timing and scope of the Government's requirement to disclose statements or reports of its testifying witnesses. 18 U.S.C. § 3500.

Addressing the defendant's first request for copies of any notes taken by United States or foreign government agents during the course of the defendant's interrogations or interviews, the defendant's primary complaint is that it interprets the Government's response as indicating that the requested notes "need only be disclosed as Jencks material." Def.'s Reply 1. The defendant disputes this notion and argues that all notes must be disclosed pursuant to Rule 16. The defendant's arguments assume that the Government is planning to withhold notes, so the defendant requests that the Court order the Government to produce all such notes with the concession that "any portion of the notes containing mental impressions of the note-taker or other notations that do not reflect Mr. Trinidad's statements" may be redacted. Id. at 2.

A review of the Government's response reveals that the defendant has misconstrued the scope of the disclosure the Government intends to make to comply with the defendants discovery request for interrogation notes. Contrary to the defendant's assertion, the Government does not state that it will make disclosure only of statements governed by the Jencks Act. In actuality, the Government states that it "is currently in the process of collecting all the notes that were taken by agents during their three interviews of the defendant, and will disclose those notes to the defendant . . . ." Gov't Opp. 5. The Government then goes on to state that "[b]y agreeing to disclose copies of the notes at the start of the suppression hearing, the government has committed

4

to do more than what Rule 16 and the Jencks Act require." Id. at 6. In light of the Government's promise to disclose all notes, not just statements of proposed testifying witnesses, the Government has demonstrated its intent to comply with Rule 16. Accordingly, there is no need at this juncture for the Court to intervene and order disclosure with regard to the defendant's first request.

The defendant's fourth request seeks written summaries of any expert testimony the Government intends to use in its case-in-chief, including descriptions of the witnesses' opinions, the asserted bases and reasons for the opinions, and the witnesses' qualifications. Def.'s Mot. Compel 8. The defendant's dispute with this discovery request has to do with the timing, versus the substance, of the Government's anticipated disclosure. Id. at 9; Def.'s Reply 3-4. The Government stated that it planned to disclose expert testimony summaries "at least 60-90 days in advance of trial." Gov't Opp. 7. The defendant requests that the summaries be disclosed at least 120 days before trial so that he can "determine the investigation that must be done to respond . . . ." Def.'s Reply 3. The Court finds that the defendant's desire for adequate time to pursue an investigation of any anticipated expert testimony is reasonably satisfied by requiring the Government to produce expert testimony summaries 90 days in advance of trial. The Court expects that the Government's summaries will describe the witnesses' opinions, bases and reasons for those opinions, and qualifications in sufficient detail to ensure that the defendant has the information he needs to thoroughly assess the anticipated expert testimony and evaluate whether evidentiary objections are warranted, as required by Rule 16(a)(1)(G).

The defendant's seventh disclosure request seeks documents and information regarding the actual or suspected location of the United States nationals detained in Colombia and the defendant's location from the date the United States nationals were detained until his arrest in

Ecuador. Def.'s Mot. Compel 2. The defendant requests this evidence "to show that Mr. Trinidad had no contact with or opportunity to have contact with the detained Americans." Id. at 11. The Government concedes, however, that it conducted a search for information responsive to the defendant's request and "there is no evidence that defendant Trinidad ever had any 'contact or opportunity to have contact' with the detained Americans" and that "the government will not be presenting any evidence at trial suggesting that the defendant came in contact with the American hostages." Gov't Opp. 9, 11. Given the Government's admission that it lacks any evidence that the defendant had contact with the detained Americans, and its assurance that it will not present evidence at trial suggesting otherwise, the Court finds that the Government has met its disclosure requirements in response to this request under both Rule 16 and Brady. With regard to compliance with its Brady disclosure requirement, the fact of the matter is that the Government must disclose any evidence that is "material either to guilt or to punishment" and that, if suppressed, "would deprive the defendant of a fair trial." 373 U.S. at 87. Under Fed. R. Crim. P. 16(a)(1)(E), the Government must disclose documents and other specified material that "is material to preparing the defense." The defendant is correct that the materiality standard "is not a heavy one." Def.'s Reply 7; United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996). Nevertheless, because the Government conceded that it has searched and found no evidence placing the defendant in contact with the detained Americans, and will not introduce evidence contrary to that fact, there is no basis for court-ordered disclosure at this time.

The defendant's remaining requests seek documents or information regarding the relationship of the detained United States nationals to the United States government, the purpose of the flight on February 13, 2003, any surveillance or intelligence-gathering equipment on the flight, whether anyone on the flight was armed, instructions provided to the United States

nationals in the event they were captured by FARC, reports or memoranda submitted to various government entities or private contractors concerning the results of similar prior flights by the United States nationals, reports or studies discussing the degree of control exercised by the Government of Colombia over its territory and areas of the country where such control is lacking, and reports or studies concerning the structure and organization of FARC. Def.'s Mot. Compel 2-3. The defendant argues that this evidence is relevant to the issue of his intent and the affirmative defenses of lawful combatant immunity and obeying military orders. Id. at 12. In response, the Government argues that the defendant's request exceeds the scope of required disclosure and has no bearing on the defendant's intent because he had no way of knowing about the hostages employment or mission, the equipment on the downed aircraft or the status of prior flights at the time he participated in the conspiracy. Gov't Opp. 12-15.

The Court is inclined to agree with the Government that the requested information is irrelevant to the question of the defendant's intent with regard to participating in the crimes charged in the indictment. None of the requested information goes to the issue of whether FARC intended to take the Americans "hostage" for the purpose of violating 18 U.S.C. § 1203(a) since there is no indication that any employment, mission, surveillance or other activity of the detained Americans -- regardless of whether they were armed or paid by the United States government -- would preclude their being deemed "hostages" under the circumstances, and the notion that the United States is somehow involved in a direct or indirect armed conflict with FARC that would entitle its members to secure lawful combatant immunity from prosecution was disposed of in the Court's Memorandum Opinion addressing the defendant's Motion to Dismiss. Having reviewed the charges in the indictment, the Court agrees that the evidence sought in defendant's requests eight through fifteen cannot be deemed to be material to his defense since the evidence is

7

immaterial to guilt or punishment.

## CONCLUSION

For the reasons set forth above, the Court will deny the defendant's Motion to Compel. An appropriate Order will accompany this Memorandum Opinion.

March 29, 2006

Thomas F. Hogan
Chief Judge