IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| JUVENAL OVIDIO RICARDO ) | Criminal No. 04-232-02 (RCL) |
| PALMERA PINEDA, ) | |
| also known as Simon Trinidad, ) | |
| also known as Cristo Rey Mariscal Peralta ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States respectfully submits this memorandum concerning the appropriate sentence for the defendant, Simon Trinidad, who now stands before the Court as a convicted terrorist under United States law, having been found guilty by a jury of participating in a conspiracy to engage in the hostage-taking of three American citizens in violation of 18 U.S.C. § 1203(a). Hostage-taking for political purposes is a quintessential act of terrorism, and is specifically defined as such under the United States Criminal Code, see 18 U.S.C. § 2332b(g)(5)(B)(I).

The guilty verdict followed a four-week trial at which evidence was presented that the defendant was a senior member of a violent, heavily armed guerrilla organization in the Republic of Colombia known as the *Fuerzas Armadas Revolucionarias de Colombia* or "FARC." The FARC has been seeking to overthrow the democratically elected government of the Republic of Colombia for more than 40 years. The FARC has been designated a Foreign Terrorist Organization by the U.S. State Department since 1997.

At trial, the defendant admitted that the FARC regularly engages in kidnapping to raise money to finance the FARC's so-called revolution (June 28, 2007 Transcript of Trial Proceedings, at 15, 21). The defendant also admitted that he agreed with the FARC's kidnapping practices as an economic necessity for the organization, Id. at 21.

The defendant played a critical role in the hostage taking conspiracy for which he has been convicted. At trial, the evidence established that the three American hostages – Marc Gonsalves, Keith Stansell and Thomas Howes – were kidnapped by the FARC on February 13, 2003 after their plane went down in a rural region of southern Colombia. Two months later, on April 27, 2003, the FARC issued a communique acknowledging that it had taken the three Americans hostage. In that communique, the FARC offered to release several dozen Colombian politicians whom it was then holding hostage, together with the three Americans, in exchange for concessions from the Colombian government. Specifically, the FARC demanded that the Colombian government (1) carve from its sovereign territory a so-called "demilitarized zone," which would be used as a new base of operations for the FARC, and (2) release approximately 380 FARC members who had been charged and/or convicted of crimes ranging from terrorism, kidnaping, and murder, as conditions for the release of the three Americans and other hostages.

In its April 27th communique, the FARC demanded that the Colombian government name a representative to negotiate with the FARC. The communique identified the defendant as one of the FARC leaders assigned the responsibility of negotiating, "constructing," and signing any agreement involving the release of the American hostages. (June 14, 2007 Transcript of Trial Proceedings, AM Session, at 59). The communique emphasized that the defendant was "already

named" as the FARC's spokesperson on April 27, 2003, and that he was "ready to assume" his responsibilities as soon as the Government of Colombia began to capitulate to the FARC's demands.

An illegal organization like the FARC cannot realize any political benefit from taking people hostage – such as obtaining a zone of operations or the release of FARC terrorists held in Colombian prisons – without a skilled representative who is willing to serve as their trusted agent in negotiations with the Colombian government. Such a trusted would have to possess the authority, experience and intelligence to dictate the terms under which the FARC would release its hostages. The evidence at trial proved that the defendant agreed to serve that vital role in this conspiracy. Indeed, the defendant admitted on cross-examination that his services would not have been needed if the FARC were willing to unilaterally release the three American hostages:

> Q. Marc Gonsalves, Keith Stansell, Tom Howes have been held for over four years.
>
> A. That is the reality
>
> Q. And I'm just asking a very discrete question here, and that is whether you were named as the FARC's spokesman with respect to their release.
>
> A. I was named, and I was together with the other two guerillas, and I was ready to take on the responsibility as soon as the requirements were met, as the FARC indicates in the document.
>
> Q. So before you went to Quito, you had agreed with the terms that had been set by the FARC with respect to the three Americans and the other hostages the FARC was holding?
>
> A. Honestly, yes.

(June 28, 2007 Transcript of Trial Proceedings, PM Session, at 36).

> Q. There would be no need for negotiations if the FARC was just willing to unilaterally release Marc, Keith and Tom, right?

-3-

    A.    Correct. In the hypothetical case that you're proposing, it would be like that.

    Q.    There wouldn't be any need for the FARC to make contact with James Lemoyne or the family of Ingrid Betancourt?

    A.    If that were the intent, there would be no need.

    Q.    No need to jumpstart what you call "prisoner exchange" negotiations?

    A.    Correct. And in that hypothetical situation, there would not be.

    Q.    In fact, if the FARC were willing to unconditionally release Marc Gonsalves, Keith Stansell and Tom Howes, they wouldn't need a spokesperson, would they?

    A.    Correct.

    Q.    And you wouldn't be needed at all?

    A.    Correct.

(Id. at 43-44).

    Q.    And when you went to Quito, you were in agreement with Marulanda's policy that people would not be released from FARC "detention," as you call it, unless the government -- unless the FARC got something in exchange from the Government of Colombia?

    A.    Yes.

(Id. at 45).

For his role in this hostage taking conspiracy, the defendant was charged in a five count indictment with three offenses: (1) Conspiracy to Commit Hostage-Taking, in violation of Title 18, United States Code, Section 1203 (a) (Count One); (2) Hostage-Taking in violation of Title 18, Unite States Code, Sections 1203(a) and 2 (Counts Two through Four); and (3) Providing Material Support

to Terrorists, in violation of Title 18, United States Code, Section 2339A (Count Five). The jury was unable to reach a verdict on Counts Two through Five, but returned a guilty verdict on July 9, 2007 on the lead charge, Count One.

## Sentencing Recommendation

For all the reasons set forth herein, the Government requests that this Court sentence the defendant to a term of imprisonment of **60 years**. Such a sentence is within the statutory maximum provided by law for this offense and would also be consistent with the defendant's "advisory" total offense level under the Federal Sentencing Guidelines. See United States v. Booker, 543 U.S. 220 (2005).

Moreover, pursuant to 18 U.S.C. Section 3553(a), this Court is authorized to fashion a sentence which reflects, inter alia, "the nature and circumstances of the offense." In this case, a sentence of 60 years is an appropriate punishment for the defendant's leadership role in this particularly horrific crime, which involves an ongoing hostage taking that has lasted nearly five years. In additio to the unimaginable impact this act of terrorism has had on the three hostages themselves, it has been utterly devastating on their families. In this regard, victim impact statements have been submitted to the Court in camera and under seal with the filing of this memorandum. See **Attachments A through D**.

This case is unique in that the three Americans are still being held hostage against their will under deplorable conditions by the defendant's conspirators in the jungles of Colombia. A 60 year sentence will send the clear and unequivocal message that under the rule the United States judicial system will punish with appropriate proportionate severity any FARC member who joins the conspiracy to continue to detain Marc Gonsalves, Keith Stansell, and Thomas Howes. A sentence

of this magnitude will also deter future criminal conduct by sending a clear message to other foreign nationals who plot to kidnap American citizens that their illegal conduct will be severely punished in U.S. courts.

Finally, this sentence is consistent with the promise made by the Government of the United States to the Government of Colombia at the time of the defendant's extradition that he would not be subjected to a sentence of life imprisonment.

## Legal Analysis

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that certain applications of the mandatory United States Sentencing Guidelines violated the Sixth Amendment, because they permitted the maximum allowable sentence to be enhanced based on judge-determined facts. As a remedy, the Court invalidated the statutory provision that made the federal Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus making the Guidelines "effectively advisory." Booker, 543 U.S. at 245. Nonetheless, the Supreme Court held that in the future a district court must still "consult [the] Guidelines and take them into account when sentencing." Id. at 264 (citing 18 U.S.C. §§ 3553(a)(4) & (5)). "Under this new sentencing regime, a sentencing court is required 'to consider Guidelines ranges' applicable to the defendant, but is permitted 'to tailor the sentence in light of other statutory concerns as well.'" United States v. Coumaris, 399 F.3d 343, 351 (D.C. Cir. 2005) (internal quotations omitted). The "other statutory concerns" referred to in Coumaris are expressed primarily in 18 U.S.C. § 3553(a). United States v. McCants, 2006 WL 3086883 at p.4 (D.D.C.).

The decisions which have issued since the Booker ruling have set out a procedure for the imposition of sentences with the guidelines acting only in an advisory capacity. Under these rulings, a sentencing court must first correctly determine the applicable Guidelines sentence, including any

permissible departures, and then, after considering the Guidelines and all other factors in Section 3553(a), decide whether to apply the Guidelines sentence, or apply a non-Guidelines sentence. See United States v. Eura, 440 F.3d 625, 632 (4th Cir. 2005); United States v. Crosby, 397 F.3d 103, 111-13 (2d Cir. 2005).[1]

Based upon the government's calculations, the defendant's total offense level in this case is **58.** As explained in the PSI report, a total offense level over 43 is treated as an offense level of 43, which corresponds to life imprisonment. USSG, Chapter 5, Part A, paragraph 2. The United States agrees with the calculations of the presentence report writer recommending a total offense level of 54, but submits that the defendant should receive a four level enhancement under USSG §3B1.1 as an "organizer or leader" of the hostage taking conspiracy. As emphasized above, the April 27, 2003 FARC communique identifies the defendant as the FARC leader charged with the responsibility of negotiating, "constructing," and signing any agreement involving the release of the American hostages. (June 14, 2007 Transcript of Trial Proceedings, AM Session, at 59) (Testimony of Roberto Mora).

As a final matter, the Government wishes to bring to the Court's attention that as a condition for Trinidad's extradition, the United States Government promised the Government of Colombia that it would not seek a sentence of life imprisonment at the sentencing phase of the case. See

---

[1] If a district court decides not to apply a Guidelines sentence, it must explain on the record its rationale for varying from the advisory sentence. See United States v. Mares, 402 F.3d 511, 519 (5th Cir.); Crosby, 397 F.3d at 116. The final sentence will then be subject to review by the Court of Appeals for "reasonableness." Booker, 543 U.S. at 261-262. The Supreme Court has recently held that appellate courts may presume that a sentence imposed within a properly calculated Sentencing Guidelines range is a reasonable sentence. Rita v. United States, ___ U.S. ___, 127 S.Ct. 2456 (2007).

November 14, 2007 Declaration of Kenneth R. Propp, Acting Assistant Legal Advisor for Law Enforcement and Intelligence, U.S. Department of State, **Attachment E**.

The United States routinely makes assurances to other nations which extradite their nationals to this country to stand trial. See, e.g., United States v. Casamento, 887 F.2d 1141, 1185 (2d Cir. 1989) (court adhered to a specified number of years limit imposed by Spain on defendant's extradition where United States expressly acceded to Spain's terms). More importantly, United States courts have recognized that a fundamental reason for the judicial branch to respect the limitations agreed to during extradition is to protect our own citizens when extradited abroad. See United States v. Andonian, 29 F.3d 1432, 1435 (9th 1994).

Pursuant to provisions of the Colombian Constitution and domestic law, the Government of Colombia requires the United States to provide an assurance that our government will not seek a sentence of death or life in prison with regard to any defendant extradited from Colombia to the United States. The maximum term of imprisonment allowable in Colombia is 60 years in prison. See October 17, 2007 Letter to Assistant U.S. Attorney Kenneth C. Kohl from Colombian Vice Minister of Justice Guillermo Francisco Reyes Gonzales, **Attachment F**. Being respectful of these facts of Colombian law, the government requests a specific term of 60 years of imprisonment in this case.

In addition, the Government of Colombia has provided substantial assistance to the United States in the investigation and prosecution of this defendant and other dangerous terrorists and international drug traffickers. The United States Department of Justice wishes to continue the strong mutually beneficial relationship between United States law enforcement authorities and their Colombian counterparts. See November 9, 2007 Declaration of John Roth, Acting Deputy Assistant

-8-

Attorney General for the Criminal Division, U.S. Department of Justice, **Attachment G**. Accordingly, the government respectfully asks this Court to impose a specified term of years of imprisonment but not a sentence of life imprisonment.

<u>Conclusion</u>

For all of the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 60 years.

                Respectfully submitted,

                JEFFREY A. TAYLOR
                D.C. Bar No. 498610
                United States Attorney

By:        /s/
                KENNETH C. KOHL
                Assistant United States Attorney
                D.C. Bar No. 476236
                National Security Section
                U.S. Attorney's Office
                555 4th Street, NW, 11th Floor
                Washington, D.C. 20530
                (202) 616-2139
                ken.kohl@usdoj.gov

By:        /s/
                JOHN CRABB JR.
                Assistant United States Attorney
                N.Y. Bar No. 2367670
                U.S. Attorney's Office
                555 4th Street, NW, 5th Floor
                Washington, D.C. 20530
                (202) 514-7314
                john.d.crabb@usdoj.gov

By:        /s/
T. J. REARDON, III
Trial Attorney
D. C. Bar No. 141903
Criminal Division
Counterterrorism Section
U. S. Department of Justice
10th & Constitution Avenue, N.W.
Washington, D. C.  20530
(202) 514-1083